JOHN H. BLACK COMPANY, Plaintiff, *v.* SURDAM HOLDING COR-
PORATION and Others, Defendants.

Supreme Court, Erie County, May 7, 1931.

*Thomas D. Powell,* for the plaintiff.

*Kenefick, Cooke, Mitchell & Bass,* for Surdam Holding Corporation.

*Theodore J. Vogt,* for George Reinagel.

*Jacob Kaufman,* for Myers & Walters.

*William J. Magavern,* for H. D. Taylor and Robert W. Pound.

*Thomas R. Stone,* for Gold Spring Granite Co., Inc.

*Israel Rumizen,* for Liberty Bank of Buffalo.

*Wortley B. Paul,* for Umland Brothers.

*Bagley, Wechter, McCormack & Irwin,* for Seneca Clay Company, Inc.

*Kevin Killeen,* for Hugh MacRae Mills Co., Inc.

*Rann, Vaughan, Brown & Sturtevant [Lyle & Findlay* of counsel], for Buffalo Fire Door Company.

*Robert J. Summers,* for Buffalo Litholite Company.

*Saperston, McNaughton & Saperston,* for George W. Wanamaker, as assignee of Ebling Hardware & Plumbing Company, Inc.

*Edwin J. Culligan,* for Hurd Brothers.

CHARLES B. WHEELER, Official Referee. This is an action to foreclose mechanics' liens. The validity of certain liens for labor and material and the amount due on each is not contested.

The most important question in this action before the referee for decision is what rights, if any, the defendant Liberty Bank of Buffalo has in the fund subject to distribution.

The defendant Surdam Holding Corporation is the owner of certain real property in the city of Buffalo, and on or about the 11th day of February, 1930, made a contract with the Gilsam Construction Corporation for the erection of a building on the premises described in the complaint. It was stipulated on the trial there is now due and owing by the owner to the general contractor for the erection of said building the sum of $4,582.05, which is the amount subject to distribution. Numerous liens have been filed by subcontractors and materialmen against the property.

The Liberty Bank asserts a claim against the fund for $2,000 and interest by virtue of an assignment made by Gilsam Construction Corporation to it dated June 5, 1930, and filed in the clerk's office of Erie county on June 6, 1930.

This assignment appears to have been dated prior to the filing of the notices of all mechanics' liens. The evidence is that the Gilsam Construction Corporation was financially embarrassed and needed money to meet its payroll, and applied to the bank for a loan.

It had an overdraft at the bank of $494.93. The bank took the note of the construction company for $2,000 payable in ten days. The bank charged a discount of $3.33 and on June fifth gave the construction company a credit of $1,196.67 (thus wiping out the overdraft) and gave the construction company a check for $800. So the construction company owed the bank the full amount of $2,000, for which sum the assignment in question was made.

The lienors contend this assignment is not entitled to preference over the liens filed against the property, and stand on the provisions of section 15 of the present Lien Law (as amd. by Laws of 1929, chap. 515) which reads as follows: "Assignments of contracts and orders to be filed. No assignment of a contract for the performance of labor or the furnishing of materials for the improvement of real property or of the money or any part thereof due or to become due therefor, nor an order drawn by a contractor upon the owner of such real property for the payment of such money, nor an order drawn by a subcontractor upon a contractor or subcontractor for such payment, nor an order drawn by an owner upon the maker of a building loan, nor an assignment of moneys due or to grow due under a building loan contract, shall operate to reduce the lien of a subcontractor, laborer or materialman, except as provided in sections twenty-six and twenty-seven of this chapter; nor shall any such assignment or order be valid for any purpose, unless the contract (other than a building loan contract) or a statement containing the substance thereof and such assignment or a copy of each or a copy of such order, be filed within ten days after the date of such assignment of contract, or such assignment of money, or such order, in the office of the county clerk of the county wherein the real property improved or to be improved is situated and such contract, assignment or order shall have effect and be enforceable from time of such filing, and no such assignment or order shall have any validity until the same shall have been so filed, and every such assignment or order, not recorded, shall be absolutely void as against a subsequent assignee in good faith and for valuable consideration, whose assignment or order is first duly recorded. Such clerk shall enter the facts relating to such assignment or order in the 'lien docket' or in another book provided by him for such purpose."

The important thing in this section, so far as it affects this case, is the declaration that no such assignment "*shall operate to reduce the lien of a subcontractor, laborer or materialman.*"

The fund subject to distribution is insufficient to pay the amount of the various liens filed, and if the bank should be paid the $2,000 covered by its assignment, it would "*reduce*" the lien of subcontractors, laborers and materialmen.

The referee is, therefore, of the opinion that the bank cannot avail itself to participate in the distribution until all valid liens have first been paid, and that after that has been done it is entitled to any remaining surplus to reimburse itself for the advances made on the strength of the assignment.

Before the adoption of section 15, as it now reads, it was possible

for contractors to assign to banks or other persons moneys payable under their contracts, and use such funds so procured for various purposes other than work contracted to be done, leaving lienors without funds for their payment. It was, therefore, the evident purpose of the Legislature to protect those actually furnishing work and material for the job against such dangers.

We, therefore, hold that the lien or claim of the Liberty Bank by virtue of the assignment in question must be postponed in payment to the valid liens filed by subcontractors, materialmen and laborers.

*As to the right of the Liberty Bank to certain liens filed by employees of the construction company and by them assigned to the bank:*

The history relating to these labor liens is as follows: On the very day the assignment to the Liberty Bank was filed there was also filed the lien in favor of Hurd Bros. for $2,983.21 and this was shortly followed by the filing of other liens. The bank learned of the filing of these liens and conferred with the Gilsam Construction Corporation in reference to the situation. If the referee is right in his view that the bank's assignment is subordinated to such liens it imperiled its security for the advances it had made. It was then agreed that the construction corporation should cause its employees to file notices of liens for their claims and assign them to the bank as additional security. This was done. Notices of lien were made out and filed, and at the same time checks were drawn by the construction company in favor of such employees on the account in the bank in the name of the construction company. These checks were presented and cashed.

It is claimed by the lienors that the bank by virtue of the assignments to it of such labor liens, acquired no enforcible liens against the property or fund. The argument advanced is that when the construction company gave its checks as stated it paid the claim, especially when the checks were cashed, and the laborers, therefore, had no right to liens and that the bank stands precisely in the place and stead of such lienors, and cannot enforce the liens so filed.

The facts, briefly summarized, are these: The construction company applied to the Liberty Bank for a loan to enable it among other things to meet its payroll. The bank agreed to lend $2,000 on the company's note for that purpose on the construction company giving an assignment for that amount, which was done, and the proceeds of the note were passed to the credit of the construction company. Almost immediately liens were filed which rendered the assignment as security practically worthless. The officers of the construction company were called in view of the situation, and it was then agreed the construction company would have its employees

execute notices of liens for the amounts owing them and assign such liens to the bank and checks for the amounts owing them would be paid. The liens and assignments were executed and delivered to the bank, checks on the bank were at the same time drawn and given employees, later presented to the bank and cashed.

If the bank had advanced to the employees the amount of their liens there would be no question as to its right to the liens by virtue of their assignment. Does the fact it permitted them to be paid out of the funds or account standing to the credit of the construction company make any difference?

This fund had been advanced for the very purpose of taking care of the payroll, among other things.

The referee is of the opinion that equity should protect the bank in permitting the funds to be so used, and to hold the liens executed and assigned as security. The substance of the transaction should govern in equity rather than be governed by mere form.

We, therefore, hold that the liens so assigned are valid. These liens being for wages of employees are entitled to priority of payment over other liens, and we are of the opinion the Liberty Bank is entitled to the payment of the same out of the fund before other liens are paid.

### As to Lien of Cold Spring Granite Company.

It is urged that the Cold Spring Granite Company, one of the defendants, which filed a lien for $381.23, is a foreign corporation and was doing business within the State without having first obtained the requisite consent so to do, and, therefore, could acquire no valid lien for the supplies furnished and which went into the construction of the building in question.

The granite company is a foreign corporation and had not obtained a certificate permitting it to do business in the State of New York. Nevertheless the contract between it and the Gilsam Construction Company provided for the furnishing of certain granite, said granite to be delivered f. o. b. cars at Cold Spring, Minn. It cannot be said this lienor was doing business in New York when all the work was done outside the State, and delivered to the cars in Minnesota.

There appears to be no reason why the granite company's bill should not be paid and the company entitled to the lien asserted. (*Campbell* v. *Coon*, 149 N. Y. 556.)

### As to the Lien of Defendant Gleasner Compressed Air & Equipment Co., Inc.

The lien is asserted for the rental of machinery and labor and for machinery without labor. In so far as the claim arises for

rental of machinery the claimant is not entitled to assert a lien. (*Troy Public Works Co.* v. *City of Yonkers*, 207 N. Y. 81.)

Inasmuch as the Lien Law, as amended, governs the case in hand, the liens established must share *pro rata* in the distribution of the fund, saving and excepting the labor liens above mentioned. Such liens must be paid first and the fund remaining be distributed *pro rata* among other lienors.

This necessitates a careful computation for the purpose of ascertaining the percentage of each claim the fund will pay. Such a computation is directed made and submitted to the referee. The plaintiff is entitled to a bill of costs to be taxed and first deducted from the fund for distribution.

Let a decision be prepared in accordance with the views expressed.